*948 OPINION OF THE COURT
Gerard M. Weisberg, J.
Claimant has moved to strike the affirmative defense of workers’ compensation (compensation). The claim seeks damages for conscious pain and suffering, wrongful death and funeral expenses and is predicated upon medical malpractice and breach of contract. It is alleged that on January 18, 1978, at approximately 7:45 a.m., claimant’s decedent suffered a heart attack at Manhattan State Hospital (Hospital)[1] where he was employed, that there were inadequate facilities in the emergency room to give medical attention and aid such as would have saved decedent’s life, and that the Hospital breached a duty to provide emergency care facilities pursuant to a union agreement of which decedent was a third-party beneficiary "by virtue of his employment status.”
The threshold question is whether the court is a jurisdictionally competent and appropriate forum to determine the applicability of compensation. In O’Rourke v Long (41 NY2d 219), the court held that if a case was likely to fall within the exclusive jurisdiction of the Workers’ Compensation Board (Board), plaintiff bore the burden of pleading and proving the absence of compensation. Specifically, in such cases, plaintiff was required to demonstrate either (1) that no compensation policy covering the plaintiff was in effect, or (2) that plaintiff was not an employee of the defendant, or (3) that the injury did not arise out of and in the course of plaintiff’s employment. According to O’Rourke, the extent of the trial court’s jurisdiction depends upon which of the foregoing factors is involved and whether the issue is one of fact, law, or a mixed question of fact and law. With respect to the existence of a compensation policy, the court stated (p 225): "[t]he presence or absence of insurance coverage for a particular employee is * * * a question of law for the court to resolve. In future cases, the court may order an immediate hearing on any disputed facts necessary for the resolution of this limited issue.” Regarding employment status, the court indicated that this was a question of fact which should ordinarily be left to the Board, but which could be resolved by the court if the determination solely involved a pure question of law, such as one of statutory construction. As to whether the injury arose out of plaintiff’s employment, the court declined to make *949 specific findings in the case before it, indicating (p 228): "where the availability of workmen’s compensation hinges upon the resolution of questions of fact or upon mixed questions of fact and law, the plaintiff may not choose the courts as the forum for the resolution of such questions.”
The essential aspects of O’Rourke are in its promulgation of two fundamental policies: (1) that the Board is the preferred forum for initial determinations of compensation availability, and (2) that employers should not be forced to trial in plenary actions where the possible exclusivity of compensation is a genuine unresolved issue. These policies must be given effect in such fashion as the particular case permits. The procedural implications of O’Rourke, stated generally, are that where the trial court can resolve the limited issues of employment status or the existence of a compensation policy in a reasonably summary fashion, it should do so. Conversely, where determination of an issue, such as whether the accident arose out of plaintiff’s employment, is likely to require extensive fact finding similar to a plenary trial, the court should, in the exercise of sound discretion, defer to the Board.
The question before the court is whether the applicability of compensation is a genuine unresolved issue in this case. The term "genuine” in this context means that there is a reasonable likelihood that compensation benefits are available and would be the exclusive remedy. The issue is "unresolved” if the Board has not ruled upon it. In this case, there is no allegation that claimant either applied for, received or was denied compensation benefits.
The defendant alleges that claimant’s decedent was employed by the State as a custodian at the Hospital, that a policy of compensation insurance covering claimant’s decedent was procured by the State and was in full force and effect on the date of the alleged occurrence, and that claimant’s demise arose out of and in the course of his employment. Claimant’s motion is exclusively supported by the affirmation of his attorney, who argues that the heart attack which the deceased suffered did not arise out of his employment and that the emergency room at the Hospital was not set up as a clinic for employees. The affirmation does not however challenge decedent’s status as an employee of the defendant or the allegation that a policy of compensation insurance covering claimant was in effect.
The authorities which have dealt with the subject of *950 medical malpractice by an employer fall into two basic categories: (1) where the employer is engaged in a nonmedical business and supplies medical services solely to its employees (e.g., Golini v Nachtigall, 38 NY2d 745; Garcia v Iserson, 33 NY2d 421), and (2) where the employer is a hospital providing medical services to the general public (e.g., Volk v City of New York, 284 NY 279; Milashouskas v Mercy Hosp., 64 AD2d 978).[2] In the first category compensation has been held exclusive, while the opposite result has been obtained in the second. The facts pleaded here are distinguishable from Golini and Garcia since the employer is a hospital. However, unlike Volk and Milashouskas, the facility involved is not engaged in providing general medical services to the public, but is rather a psychiatric hospital engaged in the care, treatment and rehabilitation of the mentally disabled. (Mental Hygiene Law, § 7.17, subd [b]; Fisch, New York Evidence [2d ed], §§ 1063, 1068.) Significantly, claimant alleges that a duty existed to provide treatment predicated upon decedent’s status as an employee of the defendant and the beneficiary of a union contract. This allegation establishes a prima facie connection between the injury and the employment. The affirmation of claimant’s attorney is not probative evidence regarding the lack of a connection between the heart attack and decedent’s employment, since it is neither upon personal knowledge nor supported by expert opinion. (Trans Amer. Dev. Corp. v Leon, 279 App Div 189.) The cause of decedent’s heart attack is not in any event determinative of claimant’s right to sue for medical malpractice or breach of contract. (See Milashouskas v Mercy Hosp., supra, p 979.)
Accordingly, claimant has not established the unavailability of compensation as a matter of law. At this stage of the proceedings, whether decedent’s injuries arose out of and in the course of employment, must be regarded as a mixed question of fact and law, the resolution of which would require extensive and detailed fact finding resembling a plenary trial. The court further finds that the state of the law is such that a reasonable likelihood exists that compensation is the exclusive remedy.
Claimant’s motion is therefore denied. The application made *951 by defendant in its affirmation in opposition to dismiss the claim is similarly denied. Although the court remains a "jurisdictionally competent forum” to determine the applicability of compensation until a proceeding is commenced before the Board (see Takacs v Food Stop Markets, 61 AD2d 917), we believe that the Board is the appropriate forum in which to pursue this issue in the future.

. Presently called Manhattan Psychiatric Center (Mental Hygiene Law, § 7.17).

. Both Volk (supra) and Sivertsen v State of New York (19 NY2d 698) relied upon by claimant are of doubtful authority in view of language in Garcia v Iserson (supra) seemingly overruling both cases and reserving the questions there presented for future consideration.